## BOCK AND CLARK CORPORATION *v.* DEPARTMENT OF CONSUMER PROTECTION
## (SC 16860)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

---

Argued February 11—officially released August 12, 2003

*Barbara A. Frederick*, with whom were *Kevin N. Reynolds* and, on the brief, *Daniel R. Canavan*, for the appellant (plaintiff).

*Brendan T. Flynn*, assistant attorney general, with whom were *Neil G. Fishman*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Phillip Rosario*, assistant attorney general, for the appellee (substitute defendant state board of examiners for professional engineers and land surveyors).

*Opinion*

ZARELLA, J. The plaintiff, Bock and Clark Corporation, appeals from the judgment of the trial court affirming the decision of the state board of examiners for professional engineers and land surveyors (board).[1] The board concluded, inter alia, that the plaintiff was not a state licensed land surveyor but that it nevertheless had offered to engage in the practice of land surveying in Connecticut in violation of General Statutes § 20-302.[2] Thus, the board ordered the plaintiff to "discontinue . . . offering to practice land surveying [and] using any title or description tending to convey the impression [that] it is a land surveyor in . . . Connecti-

---

[1] The board is a division of the defendant, the state department of consumer protection (department). See General Statutes § 20-300. The plaintiff initially named the department as the defendant in its administrative appeal to the Superior Court. The trial court subsequently granted the plaintiff's motion to amend its appeal by substituting the board as the defendant.

[2] General Statutes § 20-302 provides in relevant part: "No person shall practice or offer to practice the profession of engineering in any of its branches, including land surveying, or use any title or description tending to convey the impression that such person is a professional engineer or a land surveyor, unless such person has been licensed or is exempt under the provisions of . . . chapter [391 of the General Statutes, General Statues §§ 20-299 through 20-310]. . . ."

cut." The dispositive issue in this appeal is whether the plaintiff's conduct falls within the purview of chapter 391 of the General Statutes, General Statutes §§ 20-299 through 20-310, entitled "Professional Engineers and Land Surveyors." We conclude that it does not and, accordingly, reverse the judgment of the trial court.

The record reveals the following facts and procedural history that are relevant to this appeal. In October, 1999, William Giel, a land surveyor licensed to practice land surveying in this state and a member of the board, filed a complaint with the defendant, the department of consumer protection (department), in which he alleged that the plaintiff was engaged in the unauthorized practice of land surveying in Connecticut. The department thereafter referred the matter to the board. In October, 2000, after investigating Giel's allegations, the board filed a two count administrative complaint against the plaintiff. In the first count of the complaint, the board alleged that the plaintiff "did not possess a [certificate of] corporate registration to practice land surveying"[3] but nevertheless had offered to practice land surveying in this state. In the second count, the board alleged that the plaintiff had "used a title or description in [this state] tending to convey the impression that [it was] a land surveyor." The board further alleged that such conduct constituted a violation of § 20-302[4] and, conse-

---

[3] The board or department issues certificates of corporate registration pursuant to General Statutes § 20-306a, which provides in relevant part: "(a) The practice of or the offer to practice professional engineering in this state by individual licensed professional engineers or the practice of or the offer to practice land surveying in this state by individual licensed land surveyors under the corporate form or by a corporation or limited liability company, a material part of the business of which includes engineering or land surveying, is permitted, provided (1) such personnel of such corporation or limited liability company as act in its behalf as engineers or land surveyors are licensed or exempt from licensure under the provisions of this chapter, and (2) such corporation or limited liability company has been issued a certificate of registration by the board as provided in this section. . . ."

[4] See footnote 2 of this opinion.

quently, constituted "grounds for the issuance of an order of immediate discontinuance" pursuant to General Statutes § 20-307a[5] and General Statutes (Rev. to 1999) § 21a-7 (2), as amended by Public Acts 1999, No. 99-73, § 8.[6]

The board held an administrative hearing on the complaint pursuant to § 20-307a. After that hearing, the board released its final decision and order, in which it found that the plaintiff, a corporation with its principal place of business in Ohio, had not obtained a certificate of corporate registration[7] that would have allowed it to practice or offer to practice land surveying in this state. The board found that, in March, 2000, the plaintiff had mailed postcards to entities doing business in this state and that those postcards contained the following lan-

[5] General Statutes § 20-307a provides: "The [d]epartment . . . may, upon request of the board or on its own motion, inquire into the existence of violations of the provisions of . . . chapter [391 of the General Statutes]. If, after notice and opportunity for hearing as provided in the regulations adopted by the Commissioner of Consumer Protection, the board determines that a violation of any provision of . . . chapter [391] or any regulation adopted under th[at] chapter exists, the board may issue an appropriate order to the person or persons found to be so violating such provision or regulation, providing for the immediate discontinuance of such violation."

[6] General Statutes (Rev. to 1999) § 21a-7 (2), as amended by Public Acts 1999, No. 99-73, § 8, provides: "Each board or commission may, in its discretion, issue (A) an appropriate order to any person found to be violating an applicable statute or regulation providing for the immediate discontinuance of the violation, (B) an order requiring the violator to make restitution for any damage caused by the violation, or (C) both. Each board or commission may, through the Attorney General, petition the superior court for the county wherein the violation occurred, or wherein the person committing the violation resides or transacts business, for the enforcement of any order issued by it and for appropriate temporary relief or a restraining order and shall certify and file in the court a transcript of the entire record of the hearing or hearings, including all testimony upon which such order was made and the findings and orders made by the board or commission. The court may grant such relief by injunction or otherwise, including temporary relief, as it deems equitable and may make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside, in whole or in part, any order of a board or commission."

[7] See footnote 3 of this opinion and accompanying text.

guage: (1) "We provide the real estate community a means to contact one source to obtain ALTA/ACSM[8] Land Title Surveys anywhere in the United States"; (2) "National Coordinator[s] of ALTA/ACSM Land Title Survey[s]"; (3) "National coverage using 14,000 licensed surveyors"; and (4) "1-800-SURVEYS." (Internal quotation marks omitted.) The board found the following additional facts: The plaintiff operates a national network of land surveyors who perform surveys of land located within the state in which the surveyors are licensed. The plaintiff coordinates land surveys in all fifty states. Land surveys are coordinated when a client in need of a commercial land survey contacts the plaintiff. The plaintiff then evaluates the client's land surveying needs, solicits bids from the land surveyors in its network and selects a surveyor to perform the survey. After the surveyor completes the survey, the plaintiff reviews it for compliance with certain industry standards and other survey standards established by the plaintiff. The plaintiff also reviews the performance of the land surveyor and compares the description and drawings in the completed survey.

On the basis of the foregoing findings, the board concluded: "Through its advertising, web site, contracts with Connecticut licensed land surveyors, the [plaintiff] offered to practice land surveying in th[is] state . . . in violation of . . . § 20-302. Further, the [plaintiff] . . . used [a] title or description conveying the impression to Connecticut consumers that it was authorized to provide land surveying services in th[is] [s]tate . . . in violation of . . . § 20-302." The board thereupon ordered the plaintiff to "immediately discontinue from offering to practice land surveying . . . or using any

---

[8] ALTA is an acronym for the American Land Title Association. ACSM is an acronym for the American Congress on Surveying and Mapping. ALTA and ACSM, along with the National Society of Professional Surveyors, have adopted industry wide standards for the performance of land title surveys.

title or description tending to convey the impression [that] it is a land surveyor in th[is] [s]tate . . . unless it has obtained a corporate registration to practice land surveying as provided in Chapter 391 of the General Statutes."

The plaintiff appealed from the decision of the board to the trial court pursuant to General Statutes § 4-183.[9] In its administrative appeal, the plaintiff claimed that the conduct in which it had engaged or had offered to engage did not, as a matter of law, (1) constitute land surveying, or (2) convey to consumers of this state that it was authorized to perform land surveying in this state.

The trial court dismissed the plaintiff's appeal, concluding that the board properly had applied the applicable law to the facts. Specifically, the trial court concluded that "[t]he board could logically conclude that the plaintiff's actions in comparing the information in its file with the survey as provided by the local [land] surveyor was an evaluative function meeting the statutory definition."

The plaintiff appealed from the judgment of the trial court to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiff renews its claims that the conduct in which it had engaged or had offered to engage did not, as a matter of law, (1) constitute land surveying, or (2) convey to Connecticut consumers that it was authorized to perform land surveying in this state. We agree.

As a threshold matter, we note that the parties dispute the standard of review. The plaintiff claims that the

---

[9] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

issue of whether its conduct falls within the purview of chapter 391 of the General Statutes is a pure question of law and that, because neither this court nor the board previously has interpreted the definition of the term "land surveyor" contained in General Statutes § 20-299 (2),[10] appellate review is plenary. The board maintains that administrative findings should be affirmed unless clearly erroneous and that, even if the board's legal conclusions are at issue, its conclusions should be afforded great deference under circumstances such as those in the present case, in which an agency has expertise in a particular area and has a history of determining factual and legal questions similar to those at issue.

We previously have stated that "[a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . We have determined, [however], that the traditional deference accorded to an agency's [determination] . . . is unwarranted when the construction of a statute [is at issue and that construction] has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Hasselt* v. *Lufthansa German Airlines*, 262 Conn. 416, 422, 815 A.2d 94 (2003).

In the present case, neither the plaintiff nor the board claims that the definition of the term "land surveyor" set forth in § 20-299 (2) has been subjected to judicial scrutiny or the board's time-tested interpretation. Additionally, our review of the record reveals no prior administrative interpretations or judicial decisions regarding the definition of "land surveyor" enumerated in § 20-299 (2). Accordingly, we do not accord any par-

---

[10] An interpretation of the definition of the term "land surveyor" enumerated in § 20-299 (2) is essential to our resolution of the issue of whether the plaintiff's conduct falls within the purview of chapter 391 of the General Statutes.

ticular deference to the board's conclusions of law and thus plenary review is appropriate.

We next review the board's legal conclusion that the plaintiff violated § 20-302, a conclusion with which the trial court agreed. We note that there are two distinct factual premises underlying the board's legal conclusion. First, the board determined that the plaintiff offered to practice land surveying in this state. Second, the board determined that the plaintiff conveyed the impression that it is authorized to perform land surveying services in this state. Thus, we must review the board's factual findings vis-á-vis the premises underlying its legal conclusion.

Certain of the board's factual findings are relevant to both premises, but the only reasonable conclusion to be drawn from them is that the plaintiff *does not* offer to perform land surveying or convey the impression that it is authorized to perform land surveying services in this state. For example, the plaintiff's advertisement on its postcards that it provides consumers one source to obtain land title surveys and coordinates land surveys, and that it operates a national network of 14,000 licensed land surveyors would not lead a reasonable person to believe that the plaintiff is offering to perform or authorized to perform land surveying services in this state. The same is true for the board's findings that the plaintiff solicits bids from land surveyors and selects a surveyor to perform the survey. These findings indicate that the plaintiff merely coordinates land surveys by recruiting licensed land surveyors to perform those surveys for its clients. This determination is buttressed by the uncontested evidence adduced at the administrative hearing, which established that the plaintiff's clients are not individual purchasers of residential property but, rather, large corporations that continually engage in commercial real estate transactions throughout the country and that need land surveys performed in multi-

ple jurisdictions. Thus, the plaintiff's clients likely are sophisticated entities that understand the limited nature of the plaintiff's services.

The board's findings that the plaintiff evaluates the client's land surveying needs and reviews both the performance of the surveyor and the surveys themselves for internal consistency and compliance with certain standards are the only findings that reasonably could have provided a basis for the board's legal conclusion. Furthermore, the trial court's conclusion that the board properly applied the law to the facts is based solely on its determination that the plaintiff's act of "comparing the information in its file with the survey as provided by the local [land] surveyor [constituted] an evaluative function meeting the statutory definition [of 'land surveyor' contained in § 20-299 (2)]."

We next review, therefore, the type of evaluative conduct encompassed by § 20-299 (2). Specifically, we must define "evaluating," as that term is used in § 20-299 (2), and then determine the context in which that term is used. General Statutes § 20-299 (2) defines a "land surveyor" in relevant part as "a person who is qualified by knowledge of mathematics, physical and applied sciences and the principles of land surveying, and who is licensed under this chapter to practice or offer to practice the profession of land surveying, including, but not limited to: (A) Measuring, evaluating or mapping elevations, topography, planimetric features or land areas of any portion of the earth's surface . . . (C) measuring, evaluating, mapping, monumenting or otherwise marking on the ground, property boundary lines, interior lot lines of subdivisions, easements, rights-of-way or street lines; (D) measuring, evaluating, mapping or marking on the ground, the horizontal location of existing or proposed buildings, structures or other improvements with respect to property boundary lines, building, setback, zoning or restriction lines, existing

or proposed interior lot lines, easements, rights-of-way or street lines; (E) measuring, evaluating, mapping or reporting the vertical location of existing or proposed buildings, structures or other improvements with respect to vertical reference surfaces, including base flood elevations; (F) measuring, evaluating, mapping or reporting the location of existing or proposed buildings, structures or other improvements or their surrounding topography with respect to flood insurance rate mapping or federal emergency management agency mapping . . . (J) evaluating or designing the horizontal or vertical alignment of roads in conjunction with the layout and mapping of a subdivision; (K) measuring, evaluating or mapping areas under the earth's surface and the beds of bodies of water . . . ."[11]

---

[11] We note that this definition of the term "land surveyor" became effective on July 1, 2000. See Public Acts 2000, No. 00-192, §§ 53, 102. Prior to July 1, 2000, § 20-299 (2) defined the term "land surveyor" as "a person who engages in the practice of that branch of engineering commonly known as land surveying and includes surveying and measuring the area of any portion of the earth's surface, the lengths and directions of the bounding lines and the contour of the surface, for their correct determination and description and for conveyancing or for recording, or for the establishment or reestablishment of land boundaries and the plotting of land and subdivisions of land, and like measurements and operations involved in the surveying of mines . . . ." General Statutes (Rev. to 1999) § 20-299 (2). Thus, prior to July 1, 2000, the definition of "land surveyor" did not include the term "evaluating."

Although the board rendered its decision on June 12, 2001, slightly less than one year after the new definition became effective, its conclusion that the plaintiff violated § 20-302 was based on its assessment of conduct that occurred prior to the effective date of the new definition. Thus, it would seem that the definition of "land surveyor" in effect prior to July 1, 2000, should be the applicable definition for the purpose of determining whether the plaintiff violated § 20-302. We nevertheless apply the new definition for several reasons. First, the board applied the new definition in addressing the issue of whether the plaintiff violated § 20-302 and the trial court applied the new definition in reviewing the board's decision. Second, both parties relied on the new definition in their briefs and at oral argument. Third and most importantly, the board's final order was prospective only; the board ordered the plaintiff to "*discontinue* . . . offering to practice land surveying . . . or using any title or description tending to convey the impression that it is a land surveyor in th[is] state . . . ." (Emphasis added.) Inasmuch as

The term "evaluating" is not defined in chapter 391 of the General Statutes. We therefore look to the common understanding of the term as expressed in the dictionary. E.g., *State* v. *Indrisano,* 228 Conn. 795, 809, 640 A.2d 986 (1994); see General Statutes § 1-1 (a). The term "evaluate" means "to determine or fix the value of" or "to determine the significance, worth, or condition of . . . by careful appraisal and study . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). The context in which the term "evaluating" is used in § 20-299 (2) indicates that the term "land surveyor," as defined therein, means a person who has "knowledge of mathematics, physical and applied sciences, and the principles of land surveying," and who uses such knowledge to evaluate *directly* the features of land and to report thereon. See General Statutes § 20-299 (2).

The plaintiff's advertisements and literature, which formed the basis of the board's findings, do not suggest that the plaintiff uses knowledge of mathematics, science and principles of land surveying to evaluate the land *directly.* To the contrary, the plaintiff merely reviews the report generated by the land surveyor and compares the description and drawings in the completed survey. The plaintiff, in reviewing reports generated by licensed land surveyors and comparing the descriptions and drawings contained therein, does not engage in the practice of land surveying within the meaning of § 20-299 (2) inasmuch as the plaintiff is not "evaluating" land directly. Nor would a reasonable person construe the plaintiff's advertisements and literature to convey the impression that it is authorized to do so. Rather, the services that the plaintiff provides for its clients are merely incidental to the actual land

the board's June 12, 2001 order restricted the plaintiff's future conduct, to which the new definition applies, but did not penalize the plaintiff for any conduct occurring prior to July 1, 2000, it would serve no useful purpose to analyze the issue under the old definition.

survey performed by licensed land surveyors. We previously have concluded that conduct that was merely *incidental* to the performance of an actual environmental survey did not constitute the practice of professional engineering for which the plaintiff company needed a license. See *E.I.S., Inc.* v. *Connecticut Board of Registration for Professional Engineers & Land Surveyors*, 200 Conn. 145, 150, 509 A.2d 1056 (1986).

Moreover, in construing § 20-299 (2), we are mindful "that regulatory statutes such as [§ 20-302] are founded upon the sound policy of the protection of public health and safety, as well as the protection of the public against incompetence and fraud." Id., 149. In the present case, the plaintiff's conduct does not jeopardize public health and safety or subject the public to incompetence and fraud because any land survey that the plaintiff obtains for its clients is performed by a licensed land surveyor and any changes to a survey that the plaintiff suggests must be approved by a licensed land surveyor.

We conclude, therefore, that the board improperly concluded that the plaintiff offered to perform land surveying or conveyed the impression that it was authorized to practice land surveying in this state.[12] Consequently, the trial court improperly dismissed the plaintiff's appeal.

---

[12] We note that the board also claims that the reports that the plaintiff produces for its clients fall within the ambit of "reporting" as that term is used in § 20-299 (2) in the same manner that the plaintiff's acts of evaluating the client's surveying needs and reviewing the surveyor's performance and the survey itself fall within the ambit of "evaluating," as that term is used in § 20-299 (2). We similarly reject this claim. The term "reporting" contained in § 20-299 (2) is used in the same context as the term "evaluating." Specifically, the term "reporting," as it is used in § 20-299 (2), refers to the act of *directly* reporting on the location of buildings, structures or other improvements, or their surrounding topography. The plaintiff's act of compiling information previously reported by a licensed land surveyor clearly does not fall within the ambit of the term "reporting," as that term is used in § 20-299 (2).

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other justices concurred.