STEPHEN BEECHER ET AL. *v.* STATE ELECTRICAL
WORK EXAMINING BOARD
(AC 27856)

DiPentima, McLachlan and Peters, Js.

Argued September 6—officially released December 4, 2007

*Richard M. Franchi*, for the appellants (plaintiffs).

*Robert W. Clark*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

PETERS, J. In this administrative appeal, an electrical subcontractor and his company on a public works project appeal from sanctions imposed on them by the state

electrical work examining board[1] for misconduct in the workplace, including the improper classification and employment of electrical apprentices. They have raised two issues of statutory construction. Their primary claim is that the board lacked the authority to impose these sanctions because, in their view, General Statutes § 31-53 vests exclusive jurisdiction over misclassification of workers in the commissioner of labor.[2] Their

[1] The state electrical work examining board is an agency of the department of consumer protection.

[2] General Statutes § 31-53 provides in relevant part: "(a) Each contract for the construction, remodeling, refinishing, refurbishing, rehabilitation, alteration or repair of any public works project by the state or any of its agents, or by any political subdivision of the state or any of its agents, shall contain the following provision: 'The wages paid on an hourly basis to any person performing the work of any mechanic, laborer or worker on the work herein contracted to be done and the amount of payment or contribution paid or payable on behalf of each such person to any employee welfare fund, as defined in subsection (h) of this section, shall be at a rate equal to the rate customary or prevailing for the same work in the same trade or occupation in the town in which such public works project is being constructed. Any contractor who is not obligated by agreement to make payment or contribution on behalf of such persons to any such employee welfare fund shall pay to each mechanic, laborer or worker as part of such person's wages the amount of payment or contribution for such person's classification on each pay day.'

\* \* \*

"(f) Each employer subject to the provisions of this section or section 31-54 shall (1) keep, maintain and preserve such records relating to the wages and hours worked by each person performing the work of any mechanic, laborer and worker and a schedule of the occupation or work classification at which each person performing the work of any mechanic, laborer or worker on the project is employed during each work day and week in such manner and form as the Labor Commissioner establishes to assure the proper payments due to such persons or employee welfare funds under this section or section 31-54, regardless of any contractual relationship alleged to exist between the contractor and such person, and (2) submit monthly to the contracting agency a certified payroll that shall consist of a complete copy of such records accompanied by a statement signed by the employer that indicates (A) such records are correct; (B) the rate of wages paid to each person performing the work of any mechanic, laborer or worker and the amount of payment or contributions paid or payable on behalf of each such person to any employee welfare fund, as defined in subsection (h) of this section, are not less than the prevailing rate of wages and the amount of payment or contributions paid or payable on behalf of

secondary claim is that the board violated their statutory and constitutional rights to due process by failing to afford them the compliance hearings prescribed by General Statutes § 4-182 (c).[3] The trial court rejected both claims. We agree and affirm the courts' judgment dismissing the plaintiffs' administrative appeal.

On March 18, 2005, the plaintiffs, Stephen Beecher and B & B Electrical Contractors, Inc. (B & B), filed a petition to appeal from two orders of the defendant, the state electrical work examining board (board). The

each such person to any employee welfare fund, as determined by the Labor Commissioner pursuant to subsection (d) of this section, and not less than those required by the contract to be paid; (C) the employer has complied with the provisions of this section and section 31-54; (D) each such person is covered by a workers' compensation insurance policy for the duration of such person's employment, which shall be demonstrated by submitting to the contracting agency the name of the workers' compensation insurance carrier covering each such person, the effective and expiration dates of each policy and each policy number; (E) the employer does not receive kickbacks, as defined in 41 USC 52, from any employee or employee welfare fund; and (F) pursuant to the provisions of section 53a-157a, the employer is aware that filing a certified payroll which the employer knows to be false is a class D felony for which the employer may be fined up to five thousand dollars, imprisoned for up to five years, or both. This subsection shall not be construed to prohibit a general contractor from relying on the certification of a lower tier subcontractor, provided the general contractor shall not be exempted from the provisions of section 53a-157a if the general contractor knowingly relies upon a subcontractor's false certification. Notwithstanding the provisions of section 1-210, the certified payroll shall be considered a public record and every person shall have the right to inspect and copy such records in accordance with the provisions of section 1-212. The provisions of subsections (a) and (b) of section 31-59 and sections 31-66 and 31-69 that are not inconsistent with the provisions of this section or section 31-54 apply to this section. Failing to file a certified payroll pursuant to subdivision (2) of this subsection is a class D felony for which the employer may be fined up to five thousand dollars, imprisoned for up to five years, or both."

[3] General Statutes § 4-182 (c) provides in relevant part: "No revocation . . . of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. . . ."

orders incorporated the board's findings that the plaintiffs repeatedly had violated General Statutes §§ 20-334, 20-341 and 21a-9[4] and corresponding administrative regulations. The trial court held that the board had proven its factual allegations and had afforded the plaintiffs the procedural rights to which they were entitled. Accordingly, the court rejected the plaintiffs' contentions that the board had acted improperly in revoking Beecher's electrical license and in imposing civil penalties on both plaintiffs. The plaintiffs have appealed.

The presently undisputed findings of the board establish the following factual background for the plaintiffs' appeal. Beecher was the holder of an unlimited electrical contractor license and the president of B & B. The plaintiffs were the subcontractors for electrical work at the Bullard Havens Regional Vocational Technical High School (Bullard Havens) in Bridgeport.

In breach of his contract obligations, Beecher installed electrical wiring at Bullard Havens that was not new and unused. Concluding that this conduct was unethical, the board revoked Beecher's electrical

---

[4] General Statutes § 20-334 (a) provides in relevant part: "No person shall engage in, practice or offer to perform the work of any occupation subject to this chapter in this state unless such person has first obtained a license as provided in section 20-333 . . . and is subject to all of the regulations adopted under this chapter for the purpose of governing apprenticeship training . . . ."

General Statutes § 20-341 (b) provides in relevant part: "The appropriate examining board may, after notice and hearing, impose a civil penalty on any person . . . who wilfully employs or supplies for employment a person who does not have such a license or certificate . . . or who violates any of the provisions of this chapter, chapter 394 or chapter 482 or the regulations adopted pursuant thereto. Such penalty shall be in an amount not more than one thousand dollars for a first violation of this subsection, not more than one thousand five hundred dollars for a second violation and not more than three thousand dollars for each violation of this subsection occurring less than three years after a second or subsequent violation of this subsection, except that any individual employed as an apprentice but improperly registered shall not be penalized for a first offense."

license and fined him $3000. The board took no action against B & B with respect to the improper wiring.

Subsequent to its inquiry into the wiring used at Bullard Havens, the board broadened its investigation of the plaintiffs' performance by inquiring into their use and reporting of electrical apprentices. The board determined that the plaintiffs had permitted four apprentices to perform electrical work without proper supervision and had misclassified them on certain payroll records. Because of this misconduct, the board imposed civil penalties of $1,263,500 on Beecher and $800,500 on B & B.[5]

Without disputing the validity of the board's adverse factual findings, the plaintiffs maintain that the court improperly dismissed their administrative appeal as a matter of law. In their view, two statutes, §§ 31-53 (f) and 4-182 (c), deprived the board of jurisdiction to adjudicate most of the issues[6] that led to the sanctions imposed on them. Like the trial court, we are not persuaded.

---

[5] Pursuant to General Statutes § 20-341 (b), the board had the authority to impose a penalty of $3000 for each of the misclassified employees for each day that each worked at the job site. Other than arguing that the board had no authority whatsoever to impose any penalty for misclassification of the plaintiffs' employees, the plaintiffs have not challenged either the calculation of the penalties imposed by the board or the propriety of the statutory provision permitting the board to impose, without limitation, a separate penalty for each day of violation.

Although the plaintiffs charge the board with vindictiveness because its composition included members who were the plaintiffs' business competitors, the plaintiffs have not argued that the composition of the board violated the applicable statutory guidelines set out in General Statutes § 20-331 (b) or that this statute deprived them of their constitutional rights to due process. Disqualification of administrative adjudicators for bias requires a factual showing of actual bias or of circumstances indicating "a probability of . . . bias too high to be constitutionally tolerable." (Internal quotation marks omitted.) *Rado* v. *Board of Education*, 216 Conn. 541, 556, 583 A.2d 102 (1990). The plaintiffs did not endeavor to make such a showing.

[6] The plaintiffs do not dispute the board's authority to adjudicate Beecher's failure to install new wiring.

I

In their principal argument for reversal of the judgment of the trial court, the plaintiffs maintain that the penalties imposed by the board on Beecher for misclassification and misuse of electrical apprentices on public works projects were improper as a matter of statutory construction. They contend that the legislature has conferred sole authority to sanction such employer misconduct on the department of labor to the exclusion of the department of consumer protection, which is the board's parent agency.[7] We are not persuaded.

The trial court rejected the plaintiffs' argument because, in the absence of any statutory analysis on their part, it had not been adequately briefed. Nonetheless, the board does not dispute the plaintiffs' contention that they have the right, on appeal, to raise an issue relating to the board's subject matter jurisdiction to impose substantial penalties on them. "Administrative agencies [such as the board] are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves. . . . [I]t is clear that an administrative body must act strictly within its statutory authority, within constitutional limitations and in a lawful manner. . . . It cannot modify, abridge or otherwise change the statutory provisions, under which it acquires authority unless the statutes expressly grant it that power." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996). Judicial review of a state agency's interpretation of the governing statutes and regulations is particularly appropriate when, as in this case, that interpretation has not previously been subjected to judicial scrutiny. *Southern*

---

[7] The maximum penalties that might have been imposed by the commissioner of labor pursuant to § 31-53 (b) are considerably less than those that were imposed by the board in this case.

*New England Telephone Co.* v. *Cashman*, 283 Conn. 644, 650, 931 A.2d 142 (2007).[8] The plaintiffs are, therefore, entitled to a plenary review of the merits of their argument as a matter of law. See id.

The plaintiffs maintain that, in enacting § 31-53,[9] the legislature designated the department of labor as the one and only administrative agency authorized to adjudicate issues relating to payment of prevailing wages and certification of payroll records. In their view, § 31-53 (f) plainly manifests the legislature's intention that the department of labor "is the all [encompassing] authority over prevailing wages and certified payroll records . . . ." According to the plaintiffs, the jurisdiction conferred by § 31-53 on the department of labor necessarily encompasses the authority to preempt the exercise of jurisdiction over any and all issues relating to misclassification of employees by other administrative agencies, such as the board.

The plaintiffs emphasize that, in this very case, the department of labor cited and fined B & B for failing to pay prevailing wages. As the board observes, however, B & B has no standing to pursue the present claim of jurisdictional error because, unlike the department of labor, the *board* never imposed any civil penalties on B & B for misclassification. The record is clear that B & B was penalized only for permitting an employee to *perform* electrical work while not licensed or registered. B & B has failed to proffer any reasoned argument to establish that, as a jurisdictional matter, this misconduct is the functional equivalent of a failure to pay prevailing wages.

---

[8] The board does not claim that its interpretation of the governing statutes reflects a long-standing practice that warrants deference as a "formally articulated interpretation of a statute when that interpretation is both time-tested and reasonable." See *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 166, 931 A.2d 890 (2007).

[9] See footnote 2.

The issue before us is, therefore, whether the board had the authority to sanction Beecher for his misconduct in misclassifying several of his electrical employees and permitting these employees to perform work that they were not licensed to perform. Specifically, the plaintiffs assert that Beecher's misrepresentation of these workers' credentials falls within the exclusive jurisdiction of the department of labor because § 31-53 (f) requires public works employers to keep, maintain and certify records relating to their employees and to file such records with that department. In their view, although the board concededly has the authority to regulate the "pursuit, practice and standards" of electrical employees "for the preservation of the public safety,"[10] that authority does not extend to policing of the misclassification of employees on records filed with the department of labor.[11]

We note that, apart from a forceful recital of the statutory texts, the plaintiffs again have offered no reasoned support for their argument of statutory exclusivity. In particular, they have not responded in depth to the board's counterargument that, although filing of payroll records with the department of labor assists that department's enforcement of its "prevailing wage" mandate; see *Electrical Contractors, Inc.* v. *Tianti*, 223 Conn. 573, 593, 613 A.2d 281 (1992); such filings also may serve other legitimate governmental purposes. We find the board's argument persuasive.

The board cites applicable statutes and regulations that unequivocally confer on the board the authority to require electrical contractors to provide assurance that apprentices perform their work with proper supervision both for their health and safety and for the health and

[10] See General Statutes § 20-332 (b).

[11] The board asserts, as a matter of statutory construction, that Beecher need not have filed documentation about his employees with the department of labor, but it is undisputed that in this case Beecher did so.

safety of the general public. General Statutes § 20-332 (b) authorizes "[t]he Commissioner of Consumer Protection, with the advice and assistance of the appropriate board [to] adopt regulations . . . for the pursuit, practice and standards of the occupations within the jurisdiction of the boards for the preservation of the public safety . . . ." Pursuant to that authority, § 20-332-15a of the Regulations of Connecticut State Agencies permits the appropriate board to discipline an electrical contractor who permits apprentices to undertake work at the job site without proper supervision.[12] In furtherance of the public policy enunciated by the statute and the regulation, General Statutes § 20-334 (c) authorizes a board to impose sanctions on a contractor who "knowingly makes false, misleading or deceptive representations regarding his work or violates the regulations adopted under this chapter . . . ." Finally, General Statutes § 20-341 (b) provides that "[t]he . . . board may, after notice and hearing, impose a civil penalty on any [licensee] who violates any of the provisions of this chapter . . . or the regulations adopted pursuant thereto. . . ."

In response to this panoply of legislative and regulatory support for the board's actions, the plaintiffs simply reiterate their bald claim that, regardless of the text of the statutes and the regulations, board authority over their misconduct "is certainly not consistent with the statutory scheme as stated in [§ 31-53] et seq." Like the trial court, we find this argument unpersuasive.[13]

---

[12] Section 20-332-15a (d) of the Regulations of Connecticut State Agencies provides: "Any person who encourages or permits an apprentice or helper to so engage in the work or occupation for which a license is required without direct supervision shall also be subject to appropriate disciplinary action. The contractor who obtains the permit for the work for which a license is required shall be deemed to have encouraged or permitted the apprentice or helper to work without direct supervision for the purpose of disciplinary action by the appropriate board."

[13] Because the plaintiffs have rejected the board's public and worker safety argument out of hand, they have made no effort to unbundle the merits of the package of penalties imposed on them. They have not raised any separate

## II

The plaintiffs' second contention is that the board lacked the authority to impose any sanctions on them because the board failed to give them the notices and failed to conduct the compliance hearings guaranteed to them by § 4-182. That statute provides in relevant part that "[n]o revocation . . . of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. . . ." General Statutes § 4-182 (c). Applying the principles enunciated in *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 855 A.2d 174 (2004), the trial court held that, viewed in its entirety, the administrative record demonstrated that the board had honored Beecher's statutory and constitutional rights to due process.[14] We agree.

The court's opinion recites the procedural history. On three separate occasions, in August and October, 2003, and March, 2004, Beecher and his lawyer attended compliance hearings to respond to allegations that Beecher had performed incompetent or negligent electrical work and that he had misclassified and failed to supervise electrical apprentices. With respect to these hearings, the board complied fully with § 4-182.

Subsequently, on April 2, 2004, the board informed Beecher's attorney that it had received additional information that Beecher had violated § 20-334 and its corresponding regulation by having been named in a court

question, therefore, about the validity of the board's decision to impose additional penalties on them for misconduct for which they already had been sanctioned by other governmental entities.

[14] As the board notes, this claim concerns only Beecher and not B & B because the statute imposes specific procedural requirements only on administrative proceedings with respect to license revocations. As a corporation, B & B did not have, and could not have had, an electrical license.

settlement for falsifying certified payrolls and time cards and for a citation for failing to pay prevailing wages. Although this letter advised the plaintiffs that proof of such violations might be grounds for additional sanctions and gave them the opportunity to respond, the board did not conduct a further compliance hearing.

Instead, on April 15, 2004, the board began administrative proceedings by filing administrative complaints against the plaintiffs. As the trial court carefully documented in its memorandum of decision, the board held four administrative hearings between May and September, 2004, all of which were attended by Beecher and his counsel. These administrative proceedings addressed both the charges for which compliance hearings had been held and those for which compliance hearings had not been held. Beecher has never claimed that the board impeded, in any way, his ability fully to present his defenses to the charges filed against him.

The court found that Beecher had been given ample notice of the charges against him and had had a sufficient opportunity to be heard. Applying the principles enunciated in *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, supra, 270 Conn. 778, it held that, even if there had not been strict compliance with § 4-182 (c), Beecher could not prevail because he did not establish that this error had prejudiced his substantial rights.

In his appeal to this court, although Beecher alludes to his disagreement with the trial court's findings of fact, he has briefed only two related issues of law. He argues that, because the board did not hold a compliance hearing with respect to some of the charges against him, the board (1) did not have subject matter jurisdiction to adjudicate any of the charges and (2) violated his rights to due process. Both issues warrant plenary

review by this court. See *Wheelabrator Lisbon, Inc.* v. *Dept. of Public Utility Control,* 283 Conn. 672, 685, 931 A.2d 159 (2007); *State* v. *Kirby,* 280 Conn. 361, 378, 908 A.2d 506 (2006).

As the trial court held, Beecher's claims of illegality depend on a construction of § 4-182 that our Supreme Court has squarely rejected. In *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control,* supra, 270 Conn. 778, the court held that (1) failure to comply with the provisions of § 4-182 (c) did not deprive an administrative agency of subject matter jurisdiction; id., 793; (2) the requirement of § 4-182 (c) that licensees have an opportunity to show compliance does not require a separate hearing or an opportunity for a hearing prior to the revocation of a license; id., 807; and (3) even if an agency failed to provide adequate notice prior to the initiation of administrative hearings, a licensee cannot establish that such a procedural error is prejudicial unless the administrative hearing failed to afford the licensee an adequate opportunity to offer evidence militating against the agency's adverse action. Id., 814–15.

Our Supreme Court's decision in *Tele Tech of Connecticut Corp.* mandates affirmance of the trial court's judgment in this case. The board had jurisdiction to decide as it did. In view of the extensive administrative hearings that Beecher attended with his attorney, the court had the authority to decide that the board's failure to hold a compliance hearing did not deprive Beecher of his statutory or constitutional rights.

The judgment is affirmed.

In this opinion the other judges concurred.