MATTHEW M.* *v.* DEPARTMENT OF
CHILDREN AND FAMILIES
(AC 34272)

Beach, Robinson and Schaller, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the identities of the family members involved in this appeal are not disclosed. The records and papers of this case shall

814

be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued April 9—officially released July 9, 2013

*John P. Clifford, Jr.*, with whom was *Joel M. Ellis*, for the appellant (plaintiff).

*Susan T. Pearlman*, assistant attorney general, with whom were *John E. Tucker*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (defendant).

*Opinion*

ROBINSON, J. The plaintiff, Matthew M., appeals from the judgment of the trial court dismissing his administrative appeal from the decision of the defendant, the Department of Children and Families (department), upholding the substantiation of the finding of physical neglect of M. On appeal, the plaintiff claims that (1) he was denied due process when the hearing officer improperly amended the department's allegations and based his decision on an allegation of physical neglect on which the department had not relied, and (2) there was not substantial evidence to support a finding of physical neglect because (a) the department's witness testified that the department could not prove physical impact, (b) the hearing officer found facts that were not supported by the record, (c) the substantiation of emotional neglect previously had been reversed by the department after its internal review, (d) the violation of the department's policy manual § 34-5[1] rendered the investigation improper and findings not legally supportable and (e) the department failed to produce evidence of the plaintiff's intent to harm M. We affirm the judgment of the trial court.

The record reveals the following facts, as found by the hearing officer, and procedural history. The plaintiff is married to Courtney M. and has one daughter, O, with her. The plaintiff has a daughter from a previous relationship, M, and Courtney has two children, C and D,

[1] See 2 Dept. of Children and Families, Policy Manual, § 34-5, available at http://www.ct.gov/dcf/cwp/view.asp?a=2639&Q=393962 (last visited June 25, 2013).

from a previous relationship. The plaintiff and Courtney have a history of engaging in domestic violence, both with each other and with the parents of their children from previous relationships. Both the plaintiff and Courtney have attended domestic counseling in Massachusetts.

With respect to the incident at issue, the hearing officer found the following facts. "On February 28, 2010, the [plaintiff] and Courtney engaged in an altercation. The argument began in the couple's bedroom, moved into [C's and D's] bedroom, the kitchen and then moved outside. During the argument, Courtney went into [C's and D's] bedroom to retrieve a baseball bat. The [plaintiff] put Courtney in a choke hold and picked her up off the ground by her neck. Courtney screamed for the children to call the police. During this time, [C and D] remained in their bedroom. The argument advanced to the kitchen and then outside to the front yard, where Courtney used the bat to break the [plaintiff's] car window. . . .

"[M] was in close proximity to the [plaintiff] and Courtney while they were outside fighting. The [plaintiff] grabbed and picked up four year old [M] and placed her in the family's [vehicle]. . . . The [plaintiff] drove the [vehicle] in the direction of Courtney and nearly ran her over, as he sped away. [D] shouted at the [plaintiff], 'don't run my Mommy over.' [M] disclosed being scared during the altercation." The East Windsor Police Department was contacted, and in the course of its investigation, one of the officers notified the department through its hotline of the incident because children had been present during the altercation.

The department's initial investigation resulted in a substantiation of emotional neglect and physical neglect as to each child, but did not recommend that the

plaintiff be placed on the department's central registry.[2] The plaintiff requested an internal review of the substantiation. The review resulted in a reversal of the allegations of emotional neglect as to each child and an upholding of the allegations of physical neglect as to each child. The plaintiff then requested an administrative hearing, which was held in September, October and November, 2010. The hearing officer issued a final decision upholding the substantiation of physical neglect as to M and reversing the substantiations of physical neglect as to the other three children. He subsequently denied the plaintiff's motion for reconsideration on February 15, 2011. The plaintiff appealed to the Superior Court, and the court issued a decision on December 30, 2011, dismissing the appeal. This appeal followed.

I

The plaintiff claims that he was denied his due process right to a fair hearing when the hearing officer upheld the substantiation of physical neglect of M on the basis of an exception to the ground relied on by the department because it had never raised that exception as a basis for physical neglect of M.[3] The plaintiff's position rests on two assumptions: (1) the department's policy manual § 34-2-7, entitled "Operational Definitions of Child Abuse and Neglect," contains grounds

[2] Section 17a-101k-1 (14) of the Regulations of Connecticut State Agencies provides in relevant part: " 'Central registry' or 'registry' means the confidential data file maintained as part of the department's computerized database, of persons who have been substantiated as individuals responsible for an act or acts of child abuse or neglect and for whom the commissioner has made a determination, based upon a standard of reasonable cause, that the individual poses a risk to the health, safety or well-being of children . . . ."

[3] Because the department characterizes the plaintiff's argument as one challenging the notice provided by the department, it contends that the plaintiff has not preserved this claim because he did not raise the issue to the hearing officer or on appeal to the trial court, and that if the claim is not waived, the plaintiff has failed to show substantial prejudice. Because the plaintiff does not challenge the notice provided by the department, we need not address the department's argument.

that the department is required to identify when providing notice of the substantiation of allegations of abuse or neglect; and (2) the grounds related to physical neglect include an exception that also must be identified and noticed to the plaintiff. We reject both assumptions.

The following facts and procedural history are necessary for the resolution of this claim. On April 4, 2010, the department mailed to the plaintiff a letter entitled "Notice of Investigation Results (Substantiated)" that substantiated the allegations of physical neglect and emotional neglect as to each of the four children and indicated that the plaintiff did "not pose a risk to the health, safety or well-being of children." After the plaintiff requested an internal review, the department informed the plaintiff that the substantiations of the allegations of emotional neglect had been reversed.[4]

Prior to the first day of the hearing, the plaintiff received all of the documentation regarding the case. Included in the documentation was the department's investigation protocol, which detailed the contacts that had been made during the initial investigation as well as the results of any reviews. At two places within the investigation protocol, there were references to the grounds that the department relied on when substantiating the allegations of physical neglect. The ground for physical neglect was first identified in the case disposition section of the initial investigation. The report noted that according to § 34-2-7 of the department's policy manual, "[p]hysical neglect is the failure, whether intentional or not, of the person responsible for the child['s]

---

[4] The department sent notice of the investigation review results on two separate dates, June 21, 2010, and August 13, 2010. The August letter appears to correct an error in the June letter that indicated that the plaintiff was being placed on the central registry for the substantiated allegations of physical neglect of the four children. The record reveals that the department never intended to list the plaintiff on the registry and it was not at issue at the substantiation hearing.

health, welfare, or care . . . to provide and maintain adequate food, clothing, supervision, and safety for the child. This includes permitting the children to live under conditions, circumstances or associations injurious to their well-being including but not limited to exposure to family violence which adversely impacts the child physically. . . . [M] was in the car when [the plaintiff] attempted to run [Courtney] over with the car. [The plaintiff] is said to have been driving erratically with [M] in the vehicle. Physical neglect of [D, C, O and M] by [the plaintiff] will be substantiated."

The ground for physical neglect was also identified in a page entitled "Investigation Appeals" that detailed the results of the internal review that had been requested on May 11, 2010. The investigation appeals page listed the allegations, a short description of the basis for the allegation, the outcome of the review of the allegation and the outcome of whether the plaintiff would be placed on the central registry. The description for the allegations of physical neglect was categorized as "[e]xposure to [family violence] w/adverse physical impact."

The hearing officer issued his final decision on January 5, 2011. He stated: "In order to support a substantiation of physical neglect the [d]epartment must demonstrate: (1) the [plaintiff] is a person responsible for the children's health, welfare or care; or is a person given access to the children by a person responsible, or is a person entrusted with the children's care; (2) the [plaintiff] denied the children proper care and attention and permitted them to live under conditions, circumstances or associations injurious to their well-being; and (3) the failure resulted in an adverse physical impact on children unless the act was a single incident that demonstrated a serious disregard for their welfare. [2 Policy Manual, supra, § 34-2-7]."

The hearing officer found that the department had failed to demonstrate by a fair preponderance of the evidence how the plaintiff had physically neglected O, C and D. M, "however, was in the middle of the altercation. The [plaintiff] placed [M] in the zone of danger of being physically injured when he put the child in the middle of a physical fight with his current wife. The [plaintiff's] actions also constitute a serious disregard for the well-being of [M] by placing her in the middle of two physically fighting adults. Courtney was swinging a bat in his direction, breaking at least one of his car windows. [M] could have been seriously injured or worse. Also, [M] was thrown into a vehicle and the [plaintiff] sped away, driving in the direction of Courtney, without restraining [M]." In his memorandum on the plaintiff's motion for reconsideration, the hearing officer reiterated the evidentiary support for his findings.

"Whether the [plaintiff] was deprived of his due process rights is a question of law, to which we grant plenary review." *State* v. *T.R.D.*, 286 Conn. 191, 210, 942 A.2d 1000 (2008). "[D]ue process [in the administrative hearing context] requires that the notice given must . . . fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law. . . . [T]he fundamental reason for the requirement of notice is to advise all affected parties of their opportunity to be heard and to be apprised of the relief sought. . . . [N]otice of a hearing is not required to contain an accurate forecast of the precise action which will be taken on the subject matter referred to in the notice. It is adequate if it fairly and sufficiently apprises those who may be affected of the nature and character of the action proposed, so as to make possible intelligent preparation for participation in the hearing . . . ." (Citations omitted; internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 823–24, 955 A.2d 15 (2008).

The gravamen of the plaintiff's argument is that because the department's disclosure of the ground for physical neglect of M, which is found in the section on "physical neglect" in § 34-2-7 of the department's policy manual, did not include the "Note" pertaining to adverse impact detailed at the end of the section on physical neglect, the hearing officer improperly amended the allegations to include the adverse impact note in violation of his due process rights. We disagree. See 2 Policy Manual, supra, § 34-2-7.

The "introduction" of policy manual § 34-2-7 provides: "The purpose of this policy is to provide consistency for staff in defining and identifying operational definitions, evidence of abuse and/or neglect and examples of impact indicators. The following operational definitions are working definitions and examples of child abuse and neglect." Id. The section pertaining to physical neglect provides in relevant part: "Evidence of physical neglect includes, but is not limited to . . . permitting the child to live under conditions, circumstances or associations injurious to his well-being including, but not limited to, the following . . . exposure to family violence which adversely impacts the child physically . . . ." Id. In addition, several other examples of evidence of physical neglect refer to types of actions that could adversely impact a child.[5] A "Note" to the physical neglect section provides in relevant part that "adverse impact may not be required if the action/inaction is a single incident that demonstrates a serious disregard for the child's welfare." Id.

The plaintiff's position rests on a misinterpretation of the physical neglect section. Although the plaintiff is correct that the note regarding adverse impact could

---

[5] Those examples include: (1) erratic, deviant or impaired behavior, (2) substance abuse by a caregiver, and (3) psychiatric problems of a caregiver. 2 Policy Manual, supra, § 34-2-7.

be read as an exception to the necessity of proving an actual physical impact in certain instances when a single incident of family violence demonstrates a serious disregard for a child's welfare, he is incorrect in asserting that the adverse impact note must be explicitly identified in the department's investigative file in order for the hearing officer to rely on it in his decision. Because several of the grounds that would support a substantiation of physical neglect include a finding of adverse impact, when reading the section as a whole, the proper interpretation is that the adverse impact note is a part of the definition and, therefore, need not be explicitly identified in the department's descriptions of the grounds upon which it relied to substantiate an allegation of physical neglect.[6] Thus, the hearing officer did not amend the allegations, and it was not improper for the hearing officer to render his decision on the basis of the adverse impact note. Accordingly, we conclude that the plaintiff's due process rights were not violated.[7]

---

[6] The plaintiff cites several statutory and regulatory provisions to support his argument that the hearing officer improperly amended the allegations in violation of his due process rights. Those provisions, however, relate to the statutory notice that the department is required to provide the plaintiff upon a substantiation of abuse or neglect and subsequent reviews of such substantiations. As the plaintiff has not raised a claim that challenges the notice that he received from the department, we do not address this issue. Moreover, we express no opinion as to whether the department was required to provide the plaintiff with the grounds for the substantiation.

[7] To the extent that the plaintiff claims that he did not have proper notice of the grounds for the substantiation of the physical neglect finding, this argument is without merit. The plaintiff does not dispute that he received the department's entire investigative record that was used to substantiate the finding of physical neglect. Moreover, testimony by the department's witnesses revealed that the basis for the substantiation included that the plaintiff's actions constituted a disregard for M's welfare. Additionally, the department's policy manual is available to the public online. That the plaintiff was proceeding on a mistaken interpretation of one of the examples does not mean that he could not have been aware of the grounds of the hearing officer's decision or that the hearing officer improperly amended the department's allegations. For the same reasons, we also reject the plaintiff's argument that the hearing officer was not impartial pursuant to General Statutes § 4-176e.

## II

We next address the plaintiff's claim that, on the evidence presented, the hearing officer could not have substantiated the allegation of physical neglect of M. The plaintiff has raised numerous challenges that will be addressed in turn.

We first note our standard of review. "[J]udicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Conclusions of law reached by the administrative agency must stand if . . . they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations omitted; internal quotation marks omitted.) *Dickman* v. *Office of State Ethics, Citizen's Ethics Advisory Board*, 140 Conn. App. 754, 766–67, 60 A.3d 297 (2013).

### A

The plaintiff first argues that the substantiation of physical neglect should not be upheld because the

department's social worker who investigated the incident, Katrin Keating, testified that there was no evidence of physical impact. According to the plaintiff, by admitting that there was no physical impact, Keating admitted that the department "had no case." We disagree.

The following facts are necessary for our resolution of this claim. Keating testified about her investigation of the incident after she was assigned to the family on March 1, 2010. On direct examination, Keating first testified about the events that had transpired on February 28, 2010. She further testified that as a result of her investigation, the department made a finding that the plaintiff had shown a reckless disregard for the wellbeing of the children and that all of the factors that she considered were contained in her protocol.

During cross-examination, when the plaintiff's counsel attempted to elicit from Keating the operational definitions of emotional neglect and physical neglect, the hearing officer interrupted, stating: "The department did . . . [reverse its] emotional neglect substantiation. So, for my purposes, I don't need to go into the operational definitions for . . . emotional neglect and what facts [the department is] using for emotional neglect. . . . What I'm really concerned with is physical neglect, and basically, when we talk about physical neglect under the department's operational definitions, I'm looking for—not the definition, but facts to support physical impact to the children, and that's what we should focus on." Following the hearing officer's statement, the plaintiff's counsel focused his questioning on physical impact. He elicited from Keating that none of the children had any marks or physical injuries, and none of the children received medical treatment as a result of the incident. The plaintiff's counsel also elicited from Keating that there would not have been a

basis for the substantiation of physical neglect of M if she had not been in the car.

On redirect examination, Keating again noted that M did not have any marks, bruises or injuries as a result of the incident, but maintained that the children did not need to have marks or injuries to substantiate physical neglect. She stated that "if the children are in the zone of danger where they could have been injured, they report at risk by being in that situation. There was a disregard for their welfare."

As we noted in part I of this opinion, the department did not need to explicitly identify the adverse impact note in order for the hearing officer to rely on it in his decision because the note is a part of the definition. Likewise, the department could rely on the note in proving its case without explicitly stating it. Indeed, the department was required to prove only that M was "permitted to live under conditions, circumstances or associations injurious" to her well-being. General Statutes § 46b-120 (6). It could do so by providing evidence that the plaintiff's actions satisfied *any* of the examples of evidence of physical neglect that applied when making its determination. Thus, it did not need to provide evidence of a physical impact in order to prove physical neglect. Accordingly, the plaintiff's claim fails.

B

The plaintiff next claims that the substantiation of physical neglect should not be upheld because the factual findings by the hearing officer were not supported by the record. Specifically, he argues that the hearing officer's finding about M being in the zone of danger was an improper reliance on the adverse impact note that was not supported by the record and that the hearing officer made this finding because he could not make factual findings on the ground of adverse physical impact. We are not persuaded.

The following facts are necessary to resolve this claim. In his final decision, the hearing officer found that "the [plaintiff] placed [M] in the zone of danger of being physically injured when he put the child in the middle of a physical fight with his current wife. The [plaintiff's] actions also constitute a serious disregard for the well-being of [M] by placing her in the middle of two physically fighting adults."

In his reconsideration ruling, the hearing officer refuted the plaintiff's argument that there was no evidence of physical neglect on the grounds of zone of danger and serious disregard for M's well-being. He stated that the "evidence in the record . . . supports a finding that the argument between the [plaintiff] and his wife moved outside into the front yard. The evidence in the record shows that instead of staying in the house to protect [M], the [plaintiff] grabbed his daughter and proceeded to his wife's truck located outside—where his wife had just smashed the window of his car with a baseball bat and shouted at the [plaintiff] as he got into her truck. The situation was volatile. The [plaintiff] placed [M] onto the center console of the truck without properly securing her in a car seat, and sped away, nearly running over Courtney as she continued to confront him. The [plaintiff's] wife was either banging on the truck's hood or she was so close to the truck that the [plaintiff] nearly ran her over. In any case, they were so close to one another that the [plaintiff's] wife could have been seriously injured or worse. [D], the [plaintiff's] stepson, was so frightened by the scene that he shouted at the [plaintiff], 'don't run over my mommy.' The hearing officer found that the [plaintiff] acted erratically by placing [M] close to the conflict, thus endangering the child's physical well-being and placing her in a zone of danger of also being physically injured."

Additionally, the hearing officer credited Courtney's testimony and found that the plaintiff "was also acting

too erratically to protect [M's] safety. Again, he placed the child in a zone of danger where she could have been injured as he sped away in his wife's vehicle, and [M] was not properly restrained or secured in a child's car seat. By his own admission, the [plaintiff] did not properly restrain [M] before leaving the scene. He drove some distance before stopping the vehicle to secure the child in the backseat."

In response to the plaintiff's argument that M could not have been physically impacted by his actions on the day of the incident, the hearing officer stated that "under the [d]epartment's policies, physical impact is not required if the evidence in the record supports a finding that the [plaintiff] seriously disregarded the welfare or well-being of a child. In this case, the hearing officer finds that the [plaintiff's] actions demonstrated a serious disregard for [M's] physical safety. Again, the [plaintiff] escalated the situation by going outside where his wife has just smashed his car window with a baseball bat. He grabbed [M], threw her into his wife's vehicle, got behind the wheel and sped away, nearly running over his wife. Even if it is established that Courtney was the aggressor, the [plaintiff] moved the child into a zone of danger and placed her at risk of injury."

We first note that the plaintiff appears to conflate two examples of evidence of physical neglect that are described in the department's policy manual § 34-2-7. One example is "exposure to family violence which adversely impacts the child physically" unless the "action/inaction is a single incident that demonstrates a serious disregard for the child's welfare." 2 Policy Manual, supra, § 34-2-7. Another example, referred to as the "zone of danger," is "exposure to violent events, situations, or persons that would be reasonably judged to compromise a child's physical safety . . . ." Id. Both in his final decision and reconsideration ruling, the hearing officer found that the plaintiff's actions constituted

physical neglect because they placed M in the zone of danger and because they demonstrated a serious disregard for M's welfare.

To the extent that the plaintiff is challenging the hearing officer's reliance on the zone of danger example as improper because the department only identified the exposure to family violence example as the ground on which it relied to substantiate the allegation of physical neglect of M, we reject this claim. As we concluded in part II A of this opinion, the department was not limited to providing evidence that supported only the ground that it stated in its investigative file. Thus, the hearing officer did not improperly rely on the zone of danger example.

Moreover, after examining the record, we conclude that there was substantial evidence upon which the hearing officer could have concluded that the substantiation of physical neglect, on the basis of the zone of danger and family violence examples, should be upheld. On the basis of the testimony of Keating and the documents in the record, there was evidence that the plaintiff and Courtney had a physical altercation in the hallway that involved a baseball bat, that the altercation moved outside into the front yard, that the plaintiff picked up M during the altercation and placed her in Courtney's vehicle unrestrained, that the plaintiff nearly hit Courtney with the vehicle when he drove away and that the plaintiff did not place M in a car seat until he had been driving several miles. Accordingly, the hearing officer did not improperly uphold the substantiation of physical neglect of M on the grounds that the plaintiff had placed her in a zone of danger and that his actions constituted a serious disregard for her welfare.

C

The plaintiff next claims that the substantiation of physical neglect should not be upheld because the

department had previously reversed the substantiation of emotional neglect. He maintains that because welfare and well-being are synonymous and because the department had previously reversed the substantiation of emotional neglect on the basis of exposure to circumstances injurious to M's well-being, the hearing officer necessarily could not have found that the plaintiff's actions demonstrated a serious disregard for M's welfare. We disagree.

In the introduction to his decision, the hearing officer stated that the issue in the hearing was the department's "decision to uphold the substantiations of the [plaintiff] as a perpetrator of physical neglect of [O, C, D and M] based on a report dated February 28, 2010. See also Regs., Conn. State Agencies § 17a-101k-6 (a) ("[a]ny person . . . who has been substantiated as an individual responsible for child abuse or neglect . . . and has received notice of the decision reached after an internal review as provided in section 17a-101k-5 of the Regulations of Connecticut State Agencies . . . may request an administrative hearing to contest the department's decisions"). The hearing officer's "[f]indings of fact shall be based exclusively on the evidence in the record and on matters noticed." General Statutes § 4-180. In this case, the evidence includes the "investigative record including protocol, medical records and other materials used to substantiate abuse or neglect . . . and any relevant documents submitted to the department by the individual responsible for use during the internal review . . . ." Regs., Conn. State Agencies § 17a-101k-8 (f). Thus, the merits of the prior reversal of the substantiation of emotional neglect as to M were not before the hearing officer, nor were the department's reasons for overturning the emotional neglect determinations. What was before the hearing officer was evidence that could have supported substantiations of emotional neglect and evidence that did support the

substantiation of physical neglect. Moreover, the existence of contradictory evidence and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks omitted.) *Altschul* v. *Salinas*, 53 Conn. App. 391, 397–98, 730 A.2d 1171, cert. denied, 249 Conn. 931, 761 A.2d 751 (1999). "The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the [agency], [a court] cannot disturb the conclusion reached by [it]." (Internal quotation marks omitted.) *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 47 Conn. App. 466, 470, 704 A.2d 827 (1998). Although the hearing officer could consider the fact that the department had reversed its substantiation of the emotional neglect finding, the plaintiff has provided us with no authority that holds that such a decision is determinative on the hearing officer's evaluation of the issue of physical neglect. The hearing officer was required to evaluate all of the evidence in front of him, and to make factual and legal determinations that were supported by that evidence. Because there was substantial evidence to support the hearing officer's conclusion that the plaintiff's actions constituted a serious disregard for M's welfare, it is of no import that the department had previously reversed the substantiation of emotional neglect of M. Accordingly, the plaintiff cannot prevail on this ground.

D

The plaintiff next argues that the violation of the department's policy manual § 34-5 rendered the investigation improper and any findings based upon it not legally supportable, and that the court improperly placed the burden on the plaintiff to prove that he

was prejudiced by the department's failure to follow its policy and interview him. The department contends that the burden of proof rests with the plaintiff and that the trial court properly found that he had failed to satisfy this burden. We agree with the department.

The following facts are necessary for our resolution of this claim. Section 34-5 of the department's policy manual governs contacts that must be made during an investigation of child abuse or neglect. It provides in relevant part: "The initial stage of the investigation shall include a face-to-face contact with . . . the child, and . . . the parent or person responsible for the child's welfare." 2 Policy Manual, supra, § 34-5. Section 34-5 further provides that "[w]hen unable to complete a face-to-face contact with the parent . . . the investigator shall . . . notify his/her supervisor of the inability to make contact and any other problems in conducting the investigation . . . make daily attempts to accomplish such contact [and] document all attempts in LINK. . . . If the parent . . . is not home at the time of the investigation visit, all reasonable efforts must be made to contact them within twenty-four (24) hours. If their whereabouts are unknown, the worker shall make reasonable efforts to locate them . . . . If the parent . . . is out-of-state and the location is known, the investigator shall attempt to make contact with the out-of-state child protection agency within one (1) working day."

At the hearing, Keating testified that the first time she attempted to contact the plaintiff by cell phone was on April 13, 2010, and that his voice mail was full. She stated that she then sent him a letter asking him to contact the department that same day, but that on the next day, April 14, 2010, Keating sent notice of the substantiation of allegations of physical and emotional neglect of the four children. Keating admitted that the letter asking the plaintiff to contact the department was not part of the investigative file and that she could

not produce a copy of it. Keating further admitted that Courtney had told her that the plaintiff might be living with his parents in Massachusetts and gave her the address on March 10, 2010. She acknowledged that she never checked the telephone directory for a telephone number, checked for a telephone number online, made any additional telephone calls to the plaintiff's cell phone, attempted to obtain the e-mail address of the plaintiff's mother after Courtney informed Keating that she had received an e-mail from the plaintiff's mother or traveled to the plaintiff's parents' house. Keating stated that issues of confidentiality render it inappropriate to leave messages if the department is unsure that the message will get to the intended party. When questioned about why she sent the substantiation letter to the plaintiff's parents' address when she was unsure about whether he resided there, she stated, "[w]e are required to attempt to send a letter at the end of the investigation."

The plaintiff also testified. He testified that he had been living with his parents in Massachusetts since the incident on February 28, 2010, that his parents have a home telephone number that is publicly listed in the telephone book and that the substantiation letter was the first correspondence that he had received from the department. He also testified about the events that had occurred on February 28, 2010.

In his closing statement, the representative for the department conceded that it had not done its "due diligence in terms of contacting [the plaintiff]." He noted, however, that it was not uncommon for those being investigated to avoid contact with the department and that "based on what [the plaintiff said], it may or may not have had a significant impact on the ultimate decision of disposition." The plaintiff, in response, argued that the substantiations should be reversed, in part, because the department had failed to follow its own

protocol and had failed to make any contact with him before making the decision to substantiate the allegations of neglect.

In rendering his decision to uphold the substantiation of physical neglect of M, the hearing officer did not address the plaintiff's argument regarding the failure of the department to contact him prior to the substantiation of physical neglect. The plaintiff filed a timely motion for reconsideration and raised, inter alia, the argument that the hearing officer should reverse the substantiation of physical neglect of M because when the department had violated § 34-5 of the policy manual by failing to contact the plaintiff during the investigation, a rebuttable presumption of prejudice was created and the department failed to rebut it. The hearing officer disagreed, stating: "The evidence in the record . . . supports a finding that the [d]epartment's investigator attempted to contact the [plaintiff] on April 13, 2010, before its investigation was completed. The [plaintiff] did not answer his cell phone, and the recording on his voice mail indicated the mailbox was full. Subsequently, the investigator mailed a letter to the [plaintiff] requesting that he contact her. . . . Soon thereafter, the investigator closed [her] case. There was sufficient evidence that the investigator made efforts to contact the [plaintiff] within the time frames allowed for completion of her investigation. . . . Although the [plaintiff] did not make himself available to the [d]epartment during the course of the investigation, this hearing officer considered his testimony in making a determination as to the facts in this matter. In fact, this hearing officer reviewed all the evidence in the record carefully and reversed all the substantiations against the [plaintiff] except physical neglect of [M]." (Citations omitted.)

In his appeal to the Superior Court, the plaintiff again raised the argument that the substantiation should be

overturned because the department had failed to interview him. The court held: "The record shows that the plaintiff was not available when the investigator tried to reach him. . . . He did testify at the hearing, however, and his testimony was evaluated by the hearing officer. Therefore, he has not demonstrated the prejudice, in not following the protocol, required for this court to sustain his appeal." (Citation omitted.)

"When a party contests the burden of proof applied by the court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Dickman* v. *Office of State Ethics, Citizen's Ethics Advisory Board*, supra, 140 Conn. App. 764. "Judicial review of an administrative decision is a creature of statute . . . and [General Statutes § 4-183 (j)] permits modification or reversal of an agency's decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) [i]n violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error or law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." (Citation omitted; internal quotation marks omitted.) *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 787, 855 A.2d 174 (2004). Nevertheless, our Supreme Court has stated that "not all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown." (Internal quotation marks omitted.) *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 97, 596 A.2d 374 (1991).

Citing *Henderson* v. *Dept. of Motor Vehicles*, 202 Conn. 453, 521 A.2d 1040 (1987), the plaintiff maintains

that once the violation of the department's policy was demonstrated, the burden rested on the department to prove that he was not prejudiced. The holding of *Henderson,* however, is much narrower. In *Henderson,* the plaintiff had appealed from a decision of the adjudication unit of the Department of Motor Vehicles suspending his license following his involvement in a fatal accident. Id., 454. This court upheld the judgment of the trial court dismissing the appeal. Id. Our Supreme Court granted certification to appeal on the limited issue of: "When an adjudicator has engaged in ex parte communication in violation of [General Statutes § 4-181], should relief be provided when the record is devoid of evidence tending to prove that the party seeking the relief has been prejudiced by the communication?" (Internal quotation marks omitted.) Id., 454–55. Both the trial court and this court had held that the plaintiff had the burden of proving prejudice. Id., 455. The Supreme Court, however, disagreed, holding that "[o]nce it has been demonstrated that a violation of § 4-181 has occurred, a presumption of prejudice must be deemed to arise. Although this presumption is rebuttable, the burden of showing that a prohibited ex parte communication by an adjudicator has not prejudiced a party must be allocated to the agency if § 4-181 is to fulfill its salutary purpose." Id., 457–58.

In coming to that conclusion, the court noted that "[w]e would create a conundrum by imposing the burden of proving prejudice from an ex parte communication upon one challenging an agency decision, because an adjudicating official may not ordinarily be subjected to inquiry concerning the mental process used in reaching a decision. . . . The agency usually is in a better position to ascertain the content of any communications with its employees than is a party outside the agency, who often must depend on suspicion or rumor." (Citation omitted.) Id., 459. Thus, the narrow holding

of *Henderson* is that "once the violation of § 4-181 has been proved by the party seeking relief, the burden shifts to the agency to prove that no prejudice has resulted from the prohibited ex parte communication." Id., 460.

In the present case, the plaintiff does not allege a violation of § 4-181, but rather a violation of the department's internal policies. Moreover, the policy considerations that were present in *Henderson* do not apply here. The plaintiff's counsel thoroughly cross-examined Keating about her lack of diligence in attempting to contact the plaintiff. Additionally, unlike situations in cases involving ex parte communications, no party was better able to assess the effect of the violation than any other party.

Moreover, *Henderson* appears to be limited to the cases in which there is a violation of § 4-181. In other cases in which different statutory provisions are at issue, our courts have concluded that "the complaining party bears the burden of demonstrating that its substantial rights were prejudiced by the administrative agency's error." *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control,* supra, 270 Conn. 813 (violation of General Statutes § 4-182 [c]); see also *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 535–36, 560 A.2d 403 (1989) (violation of General Statutes § 20-29); *Jones* v. *Connecticut Medical Examining Board,* 129 Conn. App. 575, 581–84, 19 A.3d 1264 (violation of statutory notice requirements), cert. granted on other grounds, 302 Conn. 921, 28 A.3d 338 (2011). Because the plaintiff is not alleging a violation of § 4-181, we conclude that the burden was on the plaintiff to prove prejudice.

With respect to whether the plaintiff met that burden, we hold that he did not. The department admitted during its closing argument before the hearing officer that

it had not done its due diligence in attempting to contact the plaintiff. The record also demonstrates, as both the hearing officer and trial court noted, that the hearing officer considered the testimony of the plaintiff in making his determination. Accordingly, the court did not err in finding that the plaintiff was not prejudiced by the department's failure to follow its directives in § 34-5 of the policy manual.

E

We finally address the plaintiff's argument that the hearing officer committed error in upholding the finding of physical neglect because the department failed to produce evidence of the plaintiff's intent to harm M. The plaintiff maintains that, pursuant to § 17a-101k-8 (j) of the Regulations of Connecticut State Agencies, "the burden of proof is on [the department] to prove that . . . the allegations of at least one substantiation was based on the proper application of the criteria set forth in [Regulation] § 17a-101k-3 . . . ."[8] As one of the factors under § 17a-101k-3 of the regulations is intent, the plaintiff asserts that it was error for the department, the hearing officer and the court to disregard it, especially since the department would not have been able to prove intent because it could not prove that an ordinary person of average intelligence would have realized that "a parent driving with [M] with the intention of protecting her . . . was behavior that fell outside

[8] Section 17a-101k-3 of the Regulations of Connecticut State Agencies provides in relevant part: "(c) In all other cases in which the department substantiates abuse or neglect by an individual responsible, and the individual responsible is not recommended for entry on the central registry pursuant to subsection (b) of this section, the investigator shall review the case to determine whether the individual responsible poses a risk to the health, safety and well-being of children and should be listed on the central registry. . . . (e) In cases of neglect . . . the investigator, shall consider the intent, severity, chronicity and behavioral health or domestic violence concerns based on a review of the abuse or neglect that led to the substantiation, including, but not limited to if . . . (2) there was an adverse impact to the victim or a serious disregard for the victim's welfare . . . ."

expected norms of parental behavior." We are not persuaded.

In his reading of § 17a-101k-8 (j) of the regulations, the plaintiff ignores the relevant language. In its entirety, § 17a-101k-8 (j) provides: "In an administrative hearing, the burden of proof shall be on the department to prove by a fair preponderance of the evidence submitted at the hearing, that (1) the allegations of at least one substantiation; and (2) *if applicable*, the registry finding, was based on the proper application of the criteria set forth in section 17a-101k-3 of the Regulations of Connecticut State Agencies." (Emphasis added.) The department never sought to list the plaintiff in the central registry; thus, the second condition is not applicable to the plaintiff, and the department did not need to address the intent criteria found at § 17a-101k-3. Accordingly, the plaintiff cannot prevail on this claim.

The judgment is affirmed.

In this opinion the other judges concurred.